**Rodrigo GANDARELA, Petitioner–Appellant,**

**v.**

**Dan JOHNSON, Superintendent, Snake River Correctional Facility, Respondent–Appellee.**

No. 00–35596.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2001.

Filed Dec. 18, 2001.

Amended March 11, 2002.

Lucy J. Brehm, Stephen R. Sady (argued), Assistant Federal Public Defender, Portland, Oregon, for the petitioner-appellant.

Janet A. Klapstein, (argued), Assistant Attorney General, Salem, OR, for respondent-appellee.

Before HUG, T.G. NELSON and GOULD, Circuit Judges.

## ORDER

The panel recalls the mandate that issued on February 7, 2002.

The motion for reconsideration of petition for rehearing and the petition for rehearing en banc are DENIED except as the opinion is hereby amended.

The opinion filed December 18, 2001, is amended as follows:

1) In the citations following the first sentence of the third paragraph of section II of the Discussion section, delete "*Sistrunk v. Armenakis*, 271 F.3d 1174, 1179–80 (9th Cir.2001);"

2) Replace the second sentence of the third paragraph of section II of the Discussion section and the citations that follow the sentence with, "Rather, a petitioner may pass through the *Schlup* gateway by promulgating evidence that significantly undermines or impeaches the credibility of witnesses presented at trial, if all the evidence, including new evidence, makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327, 115 S.Ct. 851."

3) Replace the first sentence of the fourth paragraph of section II of the Discussion section with, "The issue before us is whether Valencia and Steele's impeachment evidence is sufficiently substantial to make it more likely than not that no reasonable juror would have found Gandarela guilty beyond a reasonable doubt."

4) Replace the first sentence (including the block quote) of the fifth paragraph of section II of the Discussion section and the citations that follow that sentence with, "In *Carriger* we held that new evidence that undermines the credi-

bility of the prosecution's case *may* alone suffice to get an otherwise barred petitioner through the *Schlup* gateway. We did not hold that such evidence *necessarily must* get a petitioner through the *Schlup* gateway. Whether evidence is sufficient to get a petitioner through the *Schlup* gateway depends on whether the evidence is such that it is 'more likely than not that no reasonable juror would have found petitioner guilty ...' *Schlup*, 513 U.S. at 327, 115 S.Ct. 851."

5) Replace the first sentence of the sixth paragraph of section II of the Discussion section with, "This evidence was not sufficient to make it more likely than not that no reasonable juror would have found Gandarela guilty and thus make a colorable claim of actual innocence."

The panel directs the Clerk to reenter judgment. The parties may seek panel rehearing or rehearing en banc thereafter within the time limits specified by FRAP 40.

**OPINION**

RONALD M. GOULD, Circuit Judge.

Oregon state prisoner Rodrigo Gandarela appeals the district court's order denying his 28 U.S.C. § 2254 petition for writ of habeas corpus challenging his 1994 jury trial conviction for sexual abuse of a minor. The victim, a four-year-old child, did not testify at trial. She testified at a competency hearing at which the defendant was not present. At trial, the child victim's hearsay statements about the incident of abuse were introduced through other witnesses who heard the statements. Gandarela failed to assert a Confrontation Clause claim on direct appeal,

thus procedurally defaulting on that claim. By offering new evidence to show "actual innocence," Gandarela now attempts to establish a procedural "gateway" permitting review of his defaulted claim.

The district court denied Gandarela's petition for writ of habeas corpus. Gandarela appeals. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Rodrigo Gandarela was tried in 1994 on charges of Rape in the First Degree, Sodomy in the First Degree, Unlawful Sexual Penetration in the First Degree, and Sexual Abuse in the First Degree, all involving a four-year-old victim. He was acquitted on the Rape charge and convicted on the other three charges.

His victim, A.V.,[1] was four years old when Gandarela allegedly molested her. Gandarela had been a transient sleeping in a local park until the victim's mother agreed to allow him to stay in the garage of her home during the winter months.

**A. The Incident**

On the night of the incident, Shannon S.[2] was babysitting A.V. and A.V.'s elder sisters, Christina V. and Lisa V. A.V.'s mother was out of the home. The three older girls were in the bathroom for a time attempting to pull a loose baby tooth out of Lisa's mouth, while petitioner and A.V. were elsewhere in the house. Shannon testified at trial that she observed Gandarela kissing the victim that night.[3] Christina testified at trial that she saw Gandarela leaning over the couch toward

---

**1.** In an attempt to preserve some degree of privacy for the child victim, we refer to her only by her initials.

**2.** We are also using initials for the child witnesses because their last names are not material. We also do not disclose A.V.'s mother's name because it is not material.

**3.** The kissing was not like a friend or relative's peck on the cheek. Rather, Shannon described the kiss as "long." Shannon also stated that she saw "his tongue in [A.V.'s] mouth."

A.V. Christina testified that she heard A.V. state that she was scared and saw A.V. move away from Gandarela. Christina also testified that she then saw Gandarela "begging [A.V.] to come back on the couch."

Shannon testified that A.V. told her, shortly after the incident, that Gandarela had "pulled her pants down and licked her on her private and on her bottom and that he stuck his middle finger in her private and that he told her to feel his penis, his private." Christina's testimony was similar.

The victim, A.V., told her mother what had happened when her mother returned home, and her mother reported the incident to the police. A.V. repeated her statement to the police in consistent terms. After investigating, the police took Gandarela into custody. He admitted to the police only that he had kissed the child.

A.V. was taken to Newberg Community Hospital where she was examined by Dr. Kimbrell. Dr. Kimbrell testified that A.V. had injuries that "were unexplained by the normal kind of activities of a child." Her injuries included a "superficial laceration near the introtus, which is the outside lips of the vagina," "a tear to the hymen, which is the membranous structure that covers the outlet of the vagina," and "redness."

## B. Competency Hearing

A.V. did not testify at trial. However, shortly before trial, she testified in a competency hearing held in chambers, at which counsel for petitioner participated but petitioner was not present.[4] In that hearing, while being held by her mother, A.V. described the molestation minimally, mostly through nods and head-shaking. She was capable of recognizing the differ-

ence between truth and lies, but expressed that she was so afraid of petitioner that she could not describe the crime in the courtroom. The trial court explicitly found that her fears and psychological resistance rendered her competent but "unavailable" for purposes of application of Oregon Rule of Evidence 803(18a)(b), governing hearsay statements of child sex crime victims. The court also concluded that there was sufficient corroboration and indicia of reliability to permit substantive admission of A.V.'s hearsay descriptions of the abuse.

## C. Trial

At trial, A.V.'s sister and mother, as well as Shannon and the investigating officer, testified as to what they had observed on the day of the incident and what A.V. had told them. Each of these witnesses related A.V.'s contemporaneous statements about the incident. There were slight differences in the witnesses' descriptions, which appeared to reflect variations in A.V.'s statements to the witnesses. However, the variations in A.V.'s statements were such as reasonably might be anticipated from a four-year-old, and all of her statements described improper sexual contact by Gandarela. Dr. Kimbrell testified as to her examination of A.V. shortly after the incident of abuse and her findings and conclusions. Neighbor kids testified to possible inconsistent statements made by A.V. regarding the incident. Gandarela testified that he did not assault A.V. He claimed that the statement he made at the time of arrest about kissing the child was referring to a prior incident, not that day.

## D. Direct Appeal and Post Conviction Review

Following conviction, Gandarela filed a notice of appeal and then voluntarily dis-

---

**4.** Gandarela's counsel raised no objection to the absence of petitioner during the *in camera* proceeding.

missed it. He subsequently filed an action for state post-conviction relief asserting that the trial court failed to ensure that he was provided with adequate and competent services of an interpreter, failed to ensure his right to testify on his own behalf, and violated his constitutional right to confront his accuser. Gandarela also claimed that he was denied effective assistance of counsel. The state court denied post-conviction relief, finding: (1) the confrontation issue was not raised on direct appeal and was thus procedurally barred; (2) Gandarela's case was fully and properly investigated and prepared, and Gandarela was effectively represented at trial; (3) the translation provided for Gandarela was adequate; and (4) Gandarela was allowed to testify on his own behalf.

Gandarela appealed from the dismissal of his post-conviction claims. On appeal, he did not challenge the dismissal of the confrontation claim as procedurally barred. The Oregon appellate court summarily affirmed the lower court's dismissal of the post-conviction claims. Gandarela filed a petition for review from the summary affirmance. The petition for review by the Oregon Supreme Court was denied and the appellate judgment was entered.

### E. Habeas Petition

On July 20, 1998, Gandarela filed a *pro se* habeas petition. In his petition, Gandarela acknowledged that the confrontation claim was defaulted. He sought relief from the procedural bar by making a claim of "actual innocence." In support of his claim of actual innocence, Gandarela submitted affidavits from Joel Valencia and Teresa Steele, who were also residing with Gandarela in A.V.'s mother's garage around the time of the incident.

In his affidavit, Valencia stated that he thought the victim "was either lying or confused" about the crime, claiming that she "used to lie quite a bit." He said that

the babysitter, Shannon, was a bad influence on the victim, claiming that the girls used to peek into the room when he and his girlfriend, Teresa Steele, were in bed. He stated that he did not like Shannon and "felt that [Shannon] was teaching [A.V.] and her sisters sexual-type stuff that they were too young for." An example he gave was one in which the girls tiptoed into the room, pulled the covers off of Valencia and Steele, then ran away laughing.

Valencia also stated that he believed that some time after Gandarela's arrest, another man had been accused of touching A.V. inappropriately on a different occasion. However, a prosecutor's form declining prosecution on that occasion lists Christina, not A.V., as the victim, and reports that the man only touched Christina's waist while playing tag.

Valencia also said that, even before the arrest, A.V.'s father had wanted Gandarela to move out of the garage because of Gandarela's behavior when drinking. Valencia asserted that this might supply a motive for the mother making up the accusation. He also stated that he had been drinking with Gandarela the day of the crime, but had left with Steele. He said that Steele had given Gandarela a sleeping pill of some sort and that when Valencia and Steele left, Gandarela appeared to be asleep. Valencia was not present during the time of the crime, and only learned of the accusation after Gandarela's arrest.

Valencia's girlfriend, Teresa Steele, stated that she was concerned about the lack of adult supervision over the children. She claimed that the girls were exposed to drinking, adults partying, and men "hanging around" the house. She said that the girls could observe and hear adult sexual activity at these times. She confirmed that it was Christina, not A.V., who accused a tenant of touching her inappropriately while playing, after Gandarela's ar-

rest. Steele acknowledged that she "did not see what happened on the date that [Gandarela] was alleged to have molested [A.V.]."

The district court rejected Gandarela's claim that the newly profered evidence so clearly demonstrated actual innocence that his procedural default should be excused and the court should address the merits of his Confrontation Clause claim. Also the court rejected Gandarela's request for an evidentiary hearing, finding that petitioner failed to meet the prerequisites of 28 U.S.C. § 2254(e)(2).

Gandarela appeals. Pursuant to 28 U.S.C. §§ 1291 and 2253, we have jurisdiction over Gandarela's appeal.

## DISCUSSION

### I.

The petition in this case was filed on July 20, 1998, and is governed by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254. We review a state conviction only for errors of federal law. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). We review a district court's denial of a petition for writ of habeas corpus *de novo*. *Fields v. Calderon*, 125 F.3d 757, 759–760 (9th Cir. 1997). We review factual findings relevant to the district court's determination for clear error. *Moran v. McDaniel*, 80 F.3d 1261, 1268 (9th Cir.1996).

### II.

Gandarela concedes that his Confrontation Clause claims are barred from review through procedural default because the claims were not raised on direct appeal to the Oregon Court of Appeals or the Oregon Supreme Court. However, he urges that a federal habeas court nonetheless may review a procedurally defaulted claim if the court's failure to hear it will result in a miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). He is correct that our review is not foreclosed by procedural bar in cases where "actual innocence" is shown.

Under this exception, a petitioner may establish a procedural "gateway" permitting review of defaulted claims if he or she demonstrates "actual innocence." *Id.* at 316, 316 n. 32, 115 S.Ct. 851.

[I]f a petitioner ... presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claim.

*Id.* at 316, 115 S.Ct. 851. The required evidence must create a colorable claim of actual innocence, that the petitioner "is innocent of the charge for which he [is] incarcerated," as opposed to legal innocence as a result of legal error. *Id.* at 321, 115 S.Ct. 851 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 452, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986)); *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). "[A] colorable showing amounts to establishing that it is more likely than not [5] that no reasonable juror

**5.** The government, in passing, argues that the AEDPA's requirement that a petitioner present "clear and convincing evidence" of innocence may supplant *Schlup's* "more likely than not" standard. We need not reach this issue. Because we conclude below that Gandarela's evidence of actual innocence does not show that it is "more likely than not" that a reasonable juror would not have convicted him, it necessarily follows that Gandarela has not presented sufficient evidence under the more stringent AEDPA language if that applied. Whether AEDPA may supplant *Schlup* on this issue is a question for another day.

would have convicted the petitioner in the light of the new evidence." *Paradis v. Arave*, 130 F.3d 385, 396 (9th Cir.1997) (citation omitted).

■ In seeking to prove actual innocence, to avoid a procedural default, a petitioner for a writ of habeas corpus need not always affirmatively show physical evidence that he or she did not commit the crime with which he or she is charged. *See Schlup*, 513 U.S. at 330, 115 S.Ct. 851; *Carriger v. Stewart*, 132 F.3d 463, 481 (9th Cir.1997) (en banc). Rather, a petitioner may pass through the *Schlup* gateway by promulgating evidence that significantly undermines or impeaches the credibility of witnesses presented at trial, if all the evidence, including new evidence, makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327, 115 S.Ct. 851.

The issue before us is whether Valencia and Steele's impeachment evidence is sufficiently substantial to make it more likely than not that no reasonable juror would have found Gandarela guilty beyond a reasonable doubt. This standard is not easy to meet. We conclude that it is not met in this case by the evidence proffered by Gandarela.

■ In *Carriger* we held that new evidence that undermines the credibility of the prosecution's case *may* alone suffice to get an otherwise barred petitioner through the *Schlup* gateway. We did not hold that such evidence *necessarily must* get a petitioner through the *Schlup* gateway. Whether evidence is sufficient to get a petitioner through the *Schlup* gateway depends on whether the evidence is such that it is "more likely than not that no reasonable juror would have found petitioner

guilty ..." *Schlup*, 513 U.S. at 327, 115 S.Ct. 851. Here, the new evidence presented by Gandarela reveals at most that: 1) A.V. may have gotten mad at Gandarela when he refused to give her money; 2) A.V. may have lied on occasion; 3) A.V. spent time with Shannon, who was arguably rude and taught A.V. and her sisters "sexual-type stuff they were too young for"; 4) A.V. sometimes may have taken things that were not hers; 5) A.V. may have observed "sexual activity" of her mother; 6) A man was accused of molesting Christina, A.V.'s elder sister, after the arrest of Gandarela; and 7) A.V.'s mother may have wanted Gandarela to find a new place to live before his molestation of A.V.

This evidence was not sufficient to make it more likely than not that no reasonable juror would have found Gandarela guilty and thus make a colorable claim of actual innocence. As the district court correctly recognized, neither Valencia nor Steele had any direct information regarding the crime. Although their speculation as to possible motivating factors for the accusations made by the four-year-old victim may have provided potential grounds for impeachment, speculative and collateral impeachment falls far short of showing actual innocence.

The impeachment evidence here does not explain A.V.'s physical injuries which were consistent with sexual molestation. No new medical or scientific evidence accounts for A.V.'s vaginal laceration. None of the proffered evidence involves a recantation by the victim or the other children who witnessed petitioner kissing her. Nor does this evidence provide any explanation for Gandarela's changing stories.[6]

Nor is this impeachment evidence particularly persuasive. Even if the child had

---

**6.** Initially, Gandarela admitted kissing A.V., but nothing more. At trial, he claimed not to have kissed her on the day of the crimes. At

post-conviction, he claimed he was with Valencia at all times—a claim that Valencia did not support then and does not support now.

been exposed to some adult sexual activity, it does not follow that she would have fabricated a tale of child abuse. Moreover, her account of the abuse was reinforced and confirmed by witness and medical testimony. And the idea that A.V.'s mother may have fabricated an accusation to get Gandarela out of her own garage is so fanciful as to border on the absurd; if she wanted to evict a non-paying boarder, there certainly were easier ways to do it.

The Supreme Court has stressed the narrow scope of the actual innocence exception. *See Schlup,* 513 U.S. at 324, 115 S.Ct. 851 (stating that "claims of actual innocence are rarely successful"). Gandarela's attempt to impeach witnesses' testimony collaterally fails to open the gateway. Gandarela has not established that the narrow gateway allowing for consideration of defaulted claims should be opened in this case.[7]

### III.

Gandarela also claims that the district court mistakenly applied the provisions of 28 U.S.C. § 2254(e)(2) and erred in denying an evidentiary hearing on the issue of actual innocence.

28 U.S.C. § 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discov-

ered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Gandarela argues that in this case, subsection (e)(2) is inapplicable and presents no bar to a hearing because he offers the affidavits of Valencia and Steele as evidence of actual innocence, not as evidence supporting his confrontation claim. Gandarela contends that the existing record suffices to establish the Confrontation Clause violation and needs no further factual development.

We need not and do not decide the issue of whether a request for an evidentiary hearing to determine issues regarding actual innocence falls under 28 U.S.C. § 2254(e)(2) because regardless of whether 28 U.S.C. § 2254(e)(2) applies, a hearing was not necessary in this case.

■ Regardless of the applicability of § 2254(e)(2), Gandarela would be required to show some degree of due diligence in his initial factual development. Gandarela has failed to do so. The evidence provided by Valencia and Steele's affidavits was readily discoverable prior to trial. Moreover, Gandarela has failed to show what more an evidentiary hearing might reveal of material import on his assertion of actual innocence. Both the affidavits of the "new" witnesses and the transcript of the original trial speak for themselves and do not support Gandarela's claim of actual innocence.

---

**7.** Because Gandarela has failed to make an adequate showing of actual innocence, we need not and do not reach the question of whether there was a Confrontation Clause violation in this case.

The district court did not abuse its discretion in finding that an evidentiary hearing was unnecessary here. *Downs v. Hoyt,* 232 F.3d 1031, 1041 (9th Cir.2000) (stating that the decision on a request for an evidentiary hearing is reviewed for abuse of discretion).

## CONCLUSION

Gandarela has not made a sufficient showing of actual innocence to warrant consideration of the merits of his procedurally defaulted constitutional claims. The district court's denial of a writ of habeas corpus was correct.

**AFFIRMED.**