Robert L. JARAMILLO, Petitioner–
Appellant,

v.

Terry L. STEWART, Respondent–
Appellee.

No. 01–17531.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 2003.

Filed Aug. 20, 2003.

Jefferson Dorsey, Assistant Federal Public Defender, Phoenix, AZ, for the appellant.

Randall Howe, Deputy Attorney General, Phoenix, AZ, for the appellee.

Before: HUG, GIBSON,* and FISHER, Circuit Judges.

HUG, Circuit Judge:

Robert Lopez Jaramillo appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his conviction by guilty plea to first degree murder of another prisoner. Jaramillo seeks relief based upon newly discovered evidence. The State failed to reveal to Jar-amillo the existence of an eyewitness that could have substantiated a viable argument of self-defense. Jaramillo contends that this constituted a constitutional defect in the trial in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Jaramillo filed a petition for habeas corpus before the state post-conviction state court, which denied the petition. Jaramillo's appeal was not timely filed and was dismissed on that basis. The federal district court dismissed Jaramillo's petition without a hearing on the basis of procedural default. This appeal concerns whether Jaramillo's claim of actual innocence is sufficient to require a hearing before the district court to determine whether the facts justify consideration of the merits of the constitutional claim, despite the procedural default. We reverse and remand for a hearing.

## I

On January 3, 1984, at a state prison recreation yard in Arizona, Jaramillo was involved in a violent incident that left an inmate, Don Abeyta, stabbed to death. According to grand jury testimony, the State's primary witness at trial would have been Correctional Service Officer Warren, the officer on duty at the time of the incident. He was the only officer supervising two recreation yards, which were separated by a fence. He was situated between the two yards.

Warren stated in an incident report that he turned from where he was facing and saw a scuffle between Abeyta, Jaramillo, and inmates Lino Flores and Pete Moreno. Warren wrote that he saw Jaramillo stab Abeyta with a shank three times while Flores and Moreno were holding Abeyta. Warren does not claim to have witnessed

---

* The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

the events leading up to, or the commencement of, the fight. Warren never testified. His incident report was related to the grand jury by Joseph Savalas, a criminal investigator for the department of corrections.

Jaramillo claims that Abeyta initiated the attack, that Flores and Moreno sought to restrain Abeyta, and that he stabbed Abeyta in self-defense.

Jaramillo, Flores and Moreno were charged with first degree murder and dangerous assault on a prisoner. The State informed appointed counsel it would seek the death penalty. Trial was scheduled to commence April 3, 1984, exactly three months after the incident. Jaramillo twice sought, and the court ordered, the State to provide discovery, including investigators' reports of interviews and names of all parties who were in a place to observe the incident.

Shortly before trial, the State offered the defendants a package plea deal. On the advice of counsel, all defendants pled guilty to first degree murder, with life sentences to be served consecutively to their current sentences, and with no parole eligibility before twenty-five years. In exchange, the State dropped the deadly assault charge and refrained from seeking the death penalty on the first degree murder charge. The facts set forth in the grand jury transcripts and investigative reports served as the factual basis for the pleas. Sentences were imposed on May 3, 1984. Jaramillo filed his notice of appeal on the day of sentencing.

On August 6, 1984, he filed a petition for post-conviction relief seeking to vacate his guilty plea on the grounds that the plea was not voluntary because he was under the influence of drugs; that he was pressured into accepting the plea by his co-defendants, who feared they would likely receive the death penalty in light of their prior records (Moreno was serving a life

sentence for first degree murder, and Flores was serving life without parole for several counts, including attempted second degree murder, deadly or dangerous assault on a prisoner, and sexual assault); and that the State offered the plea as an offer of a package deal, where all or none could accept. Jaramillo also claimed his trial attorney advised him that if he withdrew his plea, he would be convicted and sentenced to death. The prosecuting attorney testified during the evidentiary hearing before the trial court that the plea offer was a package deal. The trial court denied the petition, and Jaramillo appealed. The judgment of the trial court was affirmed by the Arizona Supreme Court. *State v. Jaramillo,* 152 Ariz. 394, 733 P.2d 279 (1987).

Jaramillo filed and voluntarily withdrew a second petition for post-conviction relief in 1994.

In July 1996, Jaramillo discovered the existence of an undisclosed eyewitness to the incident, inmate Wayne Graham. Jaramillo filed a third post-conviction petition pursuant to Arizona Rule of Criminal Procedure 32.1(e), contending that he had newly-discovered evidence. He submitted an affidavit from Graham, in which Graham swore that he witnessed the victim, Abeyta, initiate the aggression by attempting to stab Jaramillo with a shank, that Jaramillo disarmed Abeyta, and that Jaramillo stabbed Abeyta in self-defense. Graham further stated that the prosecution had interviewed him shortly after the incident. Jaramillo contends that Graham's identity and the substance of his statement were never disclosed to him or his co-defendants. This failure to disclose material exculpatory evidence is the substance of the *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claim Jaramillo seeks to raise, should he overcome the procedural bar.

The trial court denied Jaramillo's third petition without a hearing, characterizing the withholding of evidence as "pre-trial discovery error" that was waived by Jaramillo's entry of a guilty plea. Jaramillo's attorney untimely filed a petition for rehearing of the trial court's decision. The trial court accepted the petition, notwithstanding its belatedness, in conjunction with a co-defendant's timely motion for rehearing. The court denied the motion for rehearing.

Jaramillo's counsel again missed the filing deadline for the next step in the appellate process, the petition for review. Counsel also failed to notify his client that the trial court denied the petition for rehearing. Counsel's employer subsequently attempted to join a co-defendant's timely petition for review, and Jaramillo filed a *pro per* motion to file a late petition for review. Both motions were denied. Jaramillo's subsequent appeal was denied by the Arizona Court of Appeals on the grounds that Jaramillo did not file a timely petition for review. The court of appeals did not address the issue of the newly discovered evidence. The Arizona Supreme Court denied review without comment.

Jaramillo then filed a petition for habeas corpus relief in the United States District Court on the basis of the alleged *Brady* violation. The magistrate judge recommended, and the district judge adopted, his conclusion that Jaramillo's claim was barred by a procedural default, and that Jaramillo was not entitled to have his procedurally defaulted claims reviewed on the merits because he failed to show cause and prejudice for the default. The district court did not address Jaramillo's claim that the procedural default should be excused under the actual innocence exception to the bar against review of procedurally defaulted claims.

Jurisdiction is proper under 28 U.S.C. §§ 1291 and 2253(c)(3).

## II

■ The district court's decision to grant or deny a prisoner's petition for habeas corpus is reviewed de novo. *Benn v. Lambert,* 283 F.3d 1040, 1051 (9th Cir. 2002). Dismissal of a habeas corpus petition filed pursuant to 28 U.S.C. § 2254 based on state procedural default presents issues of law reviewed de novo. *Reese v. Baldwin,* 282 F.3d 1184, 1190 (9th Cir. 2002).

## III

We consider whether we should reverse and remand for the district court to consider the alternate ground of the "actual innocence" exception to procedurally defaulted claims for habeas corpus relief under the Supreme Court's decision *Schlup v. Delo,* 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In *Schlup,* the Court considered the denial of habeas corpus review of a petitioner's procedurally defaulted claim challenging his conviction and death penalty sentence on the basis of his actual innocence and constitutional errors committed during trial. *Id.* at 307, 115 S.Ct. 851.

The Court held that Schlup could proceed through the gateway despite his failure to demonstrate cause and prejudice sufficient to excuse his procedural default. *Id.* at 314, 115 S.Ct. 851. He would still be eligible to obtain review of his constitutional claims if his claim of actual innocence implicated a fundamental miscarriage of justice. *Id.* at 314–15, 115 S.Ct. 851. The Court observed that Schlup's claim of innocence was not itself the basis for habeas relief, but instead relief would depend upon the validity of his *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Brady* claims.

*Schlup*, 513 U.S. at 315, 115 S.Ct. 851. This contrasted with the Court's treatment of substantive actual innocence claims challenging a conviction obtained through an error-free trial. *Id.* at 314, 115 S.Ct. 851 (distinguishing *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)). Rather, the innocence claim was a gateway through which Schlup had to pass in order to obtain review of these constitutional claims. *Id.*

In order for Schlup to satisfy the threshold showing required to justify passage through the gateway, the Court stated that he must present evidence to "establish sufficient doubt about his guilt to justify the conclusion that his execution would be a miscarriage of justice *unless* his conviction was the product of a fair trial." *Id.* at 316, 115 S.Ct. 851 (emphasis in original). The Court specified that the standard of proof required to establish a claim of innocence required Schlup to demonstrate that a constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Id.* at 327 115 S.Ct. 851. This probability is met if it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Id.* at 327, 115 S.Ct. 851. The Court remanded to the district court to conduct an evidentiary hearing to assess the credibility of the new evidence under that standard. *Id.* at 332, 115 S.Ct. 851.

The Supreme Court and this circuit have applied *Schlup*'s actual innocence gateway exception in non-capital petitions. *Bousley v. United States*, 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *see also Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir.2002); *Sistrunk v. Armenakis*, 292 F.3d 669, 673 (9th Cir.2002) (en banc); *Paradis v. Arave*, 130 F.3d 385, 397 (9th Cir.1997). In *Bousley*, the Supreme Court remanded for an evidentiary hearing on a non-capital petitioner's claim of actual innocence. 523 U.S. at 623, 118 S.Ct. 1604.

The Court held that if petitioner was able on remand to make a sufficient showing of actual innocence of his crime of conviction and any more serious charges foregone in the course of plea bargaining, he would be entitled to have his defaulted claim considered on the merits. *Id.* at 624, 118 S.Ct. 1604.

The State claims that *Schlup*'s actual innocence standard has been superceded by 28 U.S.C. § 2254(e)(2) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), so that Jaramillo must demonstrate by "clear and convincing" evidence, rather than *Schlup*'s "more likely than not" standard, that no reasonable fact-finder would have found him guilty.

The Supreme Court has not yet addressed whether *Schlup*'s standard applies to a post-AEDPA petitioner. While *Bousley* was filed post-AEDPA, the petitioner filed his petition in 1994, preceding AEDPA's enactment. This court has applied *Schlup* to post-AEDPA petitioners. In *Majoy*, this court's most recent opinion addressing *Schlup*, we applied *Schlup*'s more likely than not standard, and remanded for an evidentiary hearing without reference to section 2254(e)(2) of AEDPA. 296 F.3d at 776–77.

In *Sistrunk*, an en banc opinion decided one month earlier than *Majoy*, we declined to decide whether *Schlup* survives AEDPA, including section 2254(e)(2), because the petitioner did not seek an evidentiary hearing. 292 F.3d at 673 n. 3. We also evaluated, without comment to AEDPA, petitioner's actual innocence claim under *Schlup*'s "more likely than not" standard. *Id.* at 673.

We need not consider whether AEDPA's section 2254(e) applies to all actual innocence claims under *Schlup*, however, because even if it would apply generally to *Schlup* claims of actual innocence, we are

guided by the Supreme Court to conclude that it does not apply to Jaramillo's claim.

■ Section 2254(e)(2)'s requirement of clear and convincing evidence applies only to petitioners who "failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2).[1] The Supreme Court has held that "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of due diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); *see also Baja v. Ducharme*, 187 F.3d 1075, 1078–79 (9th Cir.1999). Absent a showing of a lack of due diligence, a petitioner "will be excused from showing compliance with the balance of the subsection's requirements." *Williams*, 529 U.S. at 437, 120 S.Ct. 1479.

We conclude that Jaramillo was diligent in his attempt to develop the factual basis of his claim. His counsel testified that he wrote letters to and interviewed the eyewitness identified by Jaramillo and the State, including every inmate who would speak with him. He inspected the scene. Counsel interviewed all the officers involved in the evidentiary chain of custody. Counsel also filed two motions to compel discovery in response to the State's delinquent or deficient discovery requirements.

■ Jaramillo's failure to discover Graham and his exculpatory testimony was not due to a lack of diligence. Rather, it was due to the State's withholding of its knowledge of Graham's account of the incident. Section 2254(e) was not intended to bar evidentiary hearings on "a claim which was pursued with diligence but remained undeveloped in state court because, for instance, the prosecution concealed the facts . . . ." *Williams*, 529 U.S. at 434, 120 S.Ct. 1479. We are not persuaded that Jaramillo knew or should have known about Graham or his account of the fight prior to when he actually encountered Graham several years later. Both men have been in custody, where neither has the ability to freely associate. Neither Graham nor Jaramillo had reason to know the State withheld Graham's identity and account of events from Jaramillo. Once having learned that Graham had witnessed the fight and that the State had known this and interviewed him, Jaramillo diligently developed the factual basis for his *Brady* claim before the state court. He therefore need not satisfy the requirements of § 2254(e)(2) with respect to his claim of actual innocence.

■ We now turn to the merits of Jaramillo's *Schlup* claim. The Supreme Court has stated that when considering *Schlup* claims, " 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623, 118 S.Ct. 1604. "To establish actual innocence, petitioner must demonstrate that, in the light of all the evidence, it is more likely

---

1. 28 U.S.C. § 2254(e)(2) provides:

"If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

than not that no reasonable juror would have convicted him." *Id.* (internal quotation omitted); *see also United States v. Benboe,* 157 F.3d 1181, 1184 (9th Cir.1998). The Court has also stated that in cases where the State has foregone more serious charges in the course of plea bargaining, the petitioner's burden of demonstrating actual innocence must also extend to the more serious charges. *Bousley,* 523 U.S. at 624, 118 S.Ct. 1604. That is not the situation in this case. Here, Jaramillo was charged with two offenses, first degree murder and dangerous or deadly assault by a prisoner. The State dismissed the less serious assault charge, leaving the more serious first degree murder charge intact.

█ Jaramillo has presented sufficient evidence, if credible, to support a finding that he is actually innocent of first degree murder. Foremost is the previously undisclosed testimony of Graham, who provided a declaration stating that Abeyta initiated the attack, that Jaramillo wrested the shank from Abeyta, and that he stabbed Abeyta in self-defense. The second item of proof offered is the autopsy report. The report shows that Abeyta covered his right hand with a glove, and then wrapped a bandana around his palm. Jaramillo theorizes that Abeyta did so to protect his hand from the non-hilted shank. Additionally, Jaramillo claims that photographs taken by the medical examiner appear to show that the same fabric tied around Abeyta's hand was also found on the shank, supporting Jaramillo's claim that Abeyta had attempted to use the shank against him.

█ Jaramillo's proffered evidence of actual innocence supports a theory of justification pursuant to self-defense. Under Arizona law in effect at the time of the offense charged, justification was an affir-

mative defense rendering the conduct non-criminal. *State v. Farley,* 199 Ariz. 542, 19 P.3d 1258, 1261 (2001), which corresponds with *Schlup*'s actual innocence requirement.[2] The new evidence, if credible, and considered in light of all the evidence, demonstrates that it is more likely than not that no reasonable juror would have convicted Jaramillo of the charged offenses. The new evidence does more than challenge the sufficiency of the State's evidence of guilt, or the introduction of prejudicial or inadmissible evidence. *See, e.g., Sweger v. Chesney,* 294 F.3d 506, 523 (3d Cir.2002). If the defense had been established, Jaramillo would not have been convicted because his conduct was non-criminal, and, thus, he would have been actually innocent of the offense charged.

There remains a question of the credibility of the proffered evidence. Jaramillo's evidence is Graham's affidavit and the corroborating photographs. This evidence is not inconsistent with the State's primary evidence, the incident report filed by Officer Warren, because Warren does not claim to have witnessed the beginning of the fight between Jaramillo and Abeyta. Like Graham, Warren has never testified under cross-examination—his eyewitness account was related to the grand jury through a criminal investigator for the department of corrections.

A remand for an evidentiary hearing would allow the parties to develop the factual record, including the facts set forth in the investigative reports and the grand jury transcript. The district court is in the best position to observe the witnesses, including Graham, Warren, or any other necessary witness under cross-examination, together with the other evidence available, and to make the ultimate credibility determinations.

2. The defense of justification would apply to both charged offenses.

Jaramillo has alleged newly discovered evidence that, if credible, raises a sufficient doubt about his guilt, such that it is more likely than not that no reasonable juror would have found him guilty of first degree murder. *Majoy,* 296 F.3d at 775. This justifies a hearing to determine whether Jaramillo has produced sufficient evidence of actual innocence to excuse the procedural default of his *Brady* claim and entitle him to have that claim reviewed on the merits by the district court.

The judgment of the district court is REVERSED and REMANDED for further proceedings consistent with this opinion.

REVERSED and REMANDED.