**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 26 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KEVIN LENEAR CAMP,<br><br>Petitioner - Appellant,<br><br>v.<br><br>DWIGHT NEVEN, Warden and ATTORNEY GENERAL OF THE STATE OF NEVADA,<br><br>Respondents - Appellees. | No. 13-15862<br><br>D.C. No. 2:09-cv-01117-MMD-NJK<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Miranda Du, District Judge, Presiding

Argued and Submitted January 12, 2015
San Francisco California

Before: NOONAN and CLIFTON, Circuit Judges, and RAKOFF, Senior District Judge.[**]

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Jed S. Rakoff, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

Kevin Lenear Camp, a Nevada state prisoner, appeals the district court's denial of his writ of habeas corpus. We have jurisdiction pursuant to 28 U.S.C. § 2253(a), and we affirm in part and reverse and remand in part.

We review de novo the district court's denial of a habeas petition. *Cavitt v. Cullen*, 728 F.3d 1000, 1004 (9th Cir. 2013). Because Camp filed his federal habeas petition after 1996, we review the state court's ruling under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013). Under AEDPA, if a claim was "adjudicated on the merits in State court proceedings," the court may grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of" clearly established Supreme Court precedent, or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

### 1. Due Process Claims

Camp argues that the trial court violated his due process rights by (1) denying his pretrial motions for continuances; (2) denying his request for additional time to call a sur-rebuttal expert; and (3) allowing the State to call a rebuttal expert without giving him prior notice. The Nevada Supreme Court rejected these claims on Camp's direct appeal.

#### a. Pre-trial motions for continuances

2

"[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'" would violate constitutional guarantees. *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

At the time that Camp made his motions to continue, he had had two years to prepare his defense, including expert testimony. The Nevada Supreme Court's conclusion that the trial court did not abuse its discretion in denying his pre-trial motions was not unreasonable.

### b. Sur-rebuttal continuance

After Camp's case in chief, the State called Dr. Clark as a rebuttal expert without previously informing Camp that she would be called; Camp requested a continuance to find and prepare a sur-rebuttal expert. The trial court granted him a 24-hour continuance and agreed to pay the expert fee. Camp was unable to find a sur-rebuttal expert in that limited time, but he indicated that he would be able to recall his prior expert, Dr. Griest, if given another day. The trial court denied Camp's request for more time.

The Nevada Supreme Court concluded that the trial court did not abuse its discretion in denying a further continuance because Camp failed to show that he had any new evidence to present on surrebuttal.

Camp argues that the Nevada courts violated the Supreme Court's precedent in *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985). But *Ake* involved an indigent defendant who was prevented from presenting any expert psychiatric testimony in his defense. *Id.* at 83. Here Camp presented expert medical testimony from Dr. Griest and was given time, albeit limited, and funds to present a sur-rebuttal expert. Therefore, Camp has not shown that the Nevada Supreme Court violated clearly established Supreme Court precedent in upholding the trial court's limited sur-rebuttal continuance.

c. The State's presentation of surprise expert rebuttal testimony

Under Nevada law at the time of Camp's prosecution, Camp was required to provide the State with the name of any expert witnesses that he intended to present in his case in chief as well as a statement on the subject matter and substance of the expert testimony and copies of any reports prepared by the expert. *See* NEV. REV. STAT. § 174.234(2) (1999). He complied with this requirement and presented the State with Dr. Griest's report prior to trial. The State also had to disclose expert testimony for its case in chief, but the State was not required to disclose Dr. Clark

4

or her expert rebuttal testimony prior to trial because the statute applied only to the State's case in chief. *See id.*

We conclude that the statute imposed a non-reciprocal disclosure obligation on Camp and thus violated the Supreme Court's clearly established precedent in *Wardius v. Oregon*, 412 U.S. 470 (1973). In *Wardius*, the Supreme Court concluded that a criminal defendant's due process rights were violated by a rule that required the defendant to disclose details of an alibi defense when the State was not required to disclose rebuttal witnesses. *Id.* The Supreme Court held "that the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants." *Id.* at 472.

The Court went on to "hold that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a 'search for truth' so far as defense witnesses are concerned, while maintaining 'poker game' secrecy for its own witnesses." *Id.* at 475. In this case, the State makes no showing of any state interest in the non-reciprocal discovery, let alone one strong enough to justify the non-reciprocal disclosure obligation on the defendant.

5

In *Wardius*, the Supreme Court established the clear principle that "[i]t is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." *Id.* at 476. Here, Camp was required to disclose the details of his defense, and then the State used those details to prepare Dr. Clark to refute Camp's expert testimony. The State consulted with Dr. Clark for several weeks before trial, and her testimony could have been presented during the State's case in chief. Instead, the State took strategic advantage of the statute and surprised Camp with Dr. Clark's rebuttal testimony, depriving Camp of a meaningful opportunity to critique Dr. Clark's testimony.

We conclude that allowing the State to present unnoticed expert rebuttal testimony when Camp was required to disclose his own expert testimony on the same issues was a violation of the Supreme Court's precedent in *Wardius*, and that the state courts were unreasonable in denying Camp relief on this ground.

A due process violation merits grant of Camp's habeas petition only if the error was not harmless, that is, if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). The Supreme Court made clear that the non-reciprocal disclosure

6

obligation overturned in *Wardius* was "fundamentally unfair." *Wardius*, 412 U.S. at 476. "Errors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ." *Williams v. Taylor*, 529 U.S. 362, 375 (2000) (Opinion of Stevens, J.).

The conflicting expert medical testimony was central to the outcome in this case. The State was permitted a "fundamentally unfair" advantage when it was allowed to present an unnoticed expert rebuttal witness. Camp is entitled to a new trial. Therefore, we reverse the district court's denial of Camp's habeas petition and remand with instructions to grant a writ requiring the State to release Camp from custody unless it initiates new trial proceedings within a reasonable period of time to be determined by the district court.

### 2. *Brady* Claims

Under *Brady v. Maryland*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). "Evidence is deemed prejudicial, or material, only if it undermines confidence in the outcome of the trial." *Benn v. Lambert*, 283 F.3d 1040, 1053 (9th Cir. 2002).

#### a. Child Protective Services (CPS) records

We conclude that the Nevada Supreme Court applied *Brady* reasonably because Camp was not prejudiced by the State's untimely disclosure of the CPS records containing evidence of Lain's drug use. The jury found Camp guilty even after his counsel cross-examined Lain to show Lamar and Lain's involvement with CPS and evidence of Lain's drug use.

### b. Medical records containing electrocardiogram (EKG) strips

We conclude that the Nevada Supreme Court's denial of Camp's claim that the State failed to disclose Lamar's complete medical records containing the EKG strips was based on an unreasonable determination of the facts to which no deference is owed. *See* § 2254(d)(2); *Hurles v. Ryan*, 752 F.3d 768, 790 (9th Cir. 2014). The Nevada Supreme Court denied Camp's *Brady* claim based on the doctrine of the law of the case. However, Camp could not have argued that the State failed to disclose the EKG strips on direct appeal because the EKG strips were not discovered until post-conviction proceeding. The Nevada Supreme Court was put on notice that the EKG strips were likely material but it did not address this issue.

We conclude that Camp is entitled to an evidentiary hearing to determine whether the EKG strips could provide a better estimate of the time of Lamar's injury. *See Stanley v. Schriro*, 598 F.3d 612, 624 (9th Cir. 2010). First, Camp has

8

not "failed to develop the factual basis of [the] claim in State court proceedings," as § 2254(e)(2) requires, because his diligence led to the discovery of the EKG strips in the prosecutor's file. *See Insyxiengmay v. Morgan*, 403 F.3d 657, 670 (9th Cir. 2005); *Jaramillo v. Stewart*, 340 F.3d 877, 882 (9th Cir. 2003). Second, under *Townsend v. Sain*, an evidentiary hearing is justified where, as in this case, "there is a substantial allegation of newly discovered evidence" and "the material facts were not adequately developed at the state-court hearing." 372 U.S. 293, 313 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Finally, Camp has alleged facts which, if true, would present a colorable claim for relief. *See Stanley*, 598 F.3d at 624 (9th Cir. 2010). Camp alleges that a pediatric cardiologist could use the EKG strips to determine whether Lamar had any electrical impulse in his heart at the time when emergency medical technicians arrived or if he was in asystole, and that this fact could move the time of injury farther back in time, possibly when Lamar was in Lain's custody. Therefore, the EKG strips could help create a reasonable probability that the jury might have found that Lain, and not Camp, inflicted the injury on Lamar that led to his death.

Accordingly, Camp would be entitled to an evidentiary hearing on the EKG strips if we did not otherwise grant relief on his due process claim.

### 3. Ineffective Assistance of Counsel Claims

9

Camp raises multiple claims of ineffective assistance of trial counsel (IAC). To prevail on an IAC claim, a petitioner must show (1) that his counsel's performance was deficient and (2) that he was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Nevada Supreme Court rejected Camp's IAC claims, concluding that Camp failed to show deficient performance, sufficient prejudice, or both.

When evaluating *Strickland* claims under AEDPA, this court's review is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "The question," therefore, "is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). Even where this court believes the state court decision was "wrong," that result must be upheld if "fairminded jurists could disagree on [its] correctness." *Id.* at 786.

We conclude that the Nevada Supreme Court's rejection of Camp's IAC claims was not unreasonable.

### 4. *Batson* Claim

We conclude that the Nevada Supreme Court's conclusion that the *Batson* claim lacks merit was not unreasonable because Camp has not established purposeful discrimination. *See Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986);

10

*Cook v. LaMarque*, 593 F.3d 810, 814 (9th Cir. 2010). Camp's claim that the state court erred by failing to conduct a comparative juror analysis is waived because he did not present it to the Nevada Supreme Court.

### 5. Nevada's First Degree Murder by Child Abuse Statute

We conclude that Nevada's definition of first degree murder by child abuse is not unconstitutionally vague. Nevada's murder statute requires a finding of malice, which provides the criminal intent element of the crime, and at the time of Lamar's death Nevada law enumerated murder by child abuse as first-degree murder. *See* NEV. REV. STAT. § 200.010(1) (1989) (amended 2005); § 200.030(1)(a) (1995) (amended 1999). The jury's finding of malice made Lamar's death murder.

### 6. Jury Instruction

Camp argues that a jury instruction on implied malice created an unconstitutional mandatory presumption that relieved the State of its burden to prove every element of the charged crime. Camp did not raise this claim on his direct appeal; the Nevada Supreme Court denied the claim on procedural grounds.

"As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement, and (2) the

11

state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (alterations in original) (internal quotation marks omitted). This bar may be lifted "if the prisoner can demonstrate cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged violation of federal law." *Id.* (alterations in original) (internal quotation marks omitted)

In his briefing, Camp does not address the Nevada Supreme Court's conclusion on procedural default and fails to show cause and actual prejudice.

### 7. Confrontation Clause Claim

We conclude that the Nevada Supreme Court reasonably denied this claim because the trial court imposed reasonable restrictions on cross examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The restrictions did not deprive Camp of his right to confrontation, particularly where Camp's counsel cross-examined Lain at length about her drug use and prostitution career and stressed these points in closing argument to undermine Lain's trustworthiness and credibility.

### 8. Cumulative Error

Camp also brings a claim under the cumulative error doctrine. *See Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007). We conclude that Camp has not

established that "the combined effect of multiple trial court errors" violated his due process rights by "render[ing] the resulting criminal trial fundamentally unfair." *Id.*

We **AFFIRM** in part and **REVERSE** and **REMAND** in part for further proceedings consistent with this memorandum.

Each party shall bear its own costs.

13