**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LAMERLE R. JOHNSON,
*Petitioner-Appellant,*

v.

MIKE KNOWLES, Warden,
*Respondent-Appellee.*

No. 07-15221

D.C. No.
CV-02-05309-JSW

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
May 12, 2008—San Francisco, California

Filed September 2, 2008

Before: Diarmuid F. O'Scannlain, Michael Daly Hawkins,
and M. Margaret McKeown, Circuit Judges.

Opinion by Judge O'Scannlain

**COUNSEL**

Mark D. Eibert, Half Moon Bay, California, argued the cause for the petitioner-appellant and filed briefs.

Peggy S. Ruffra, Supervising Deputy Attorney General of the State of California, San Francisco, California, argued the

cause for the respondent-appellant and filed a brief; Edmund G. Brown, Attorney General of the State of California, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, and Gregory A. Ott, Deputy Attorney General, San Francisco, California, were on the brief.

---

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether a claim of miscarriage of justice excuses an untimely filed habeas petition where the petitioner does not allege actual innocence.

I

A

LaMerle R. Johnson was charged in California state court with kidnap for ransom, robbery, assault with a deadly weapon, and use of a firearm. While incarcerated and awaiting trial, he learned of a murder plot between two fellow inmates. Johnson informed the authorities of his discovery and thereafter entered into a plea agreement that he would testify against the individuals involved in the plot in exchange for pleading guilty to the charges and serving a sentence of just over 17-and-a-half years' imprisonment.

Pursuant to the plea agreement, Johnson testified against both of the individuals involved in the murder plot at their preliminary hearings. Thereafter, one of the plotters went to trial, and Johnson also testified during these proceedings. Although the exact chronology is unclear, Johnson alleges that "law enforcement officers" employed at the jail where he was being housed during the trial threatened to kill him if he

continued testifying for the state. Johnson asserts the officers beat him and threatened to place him in a cell with the plotting individuals and to ensure that he was labeled a snitch when he ultimately went to prison.

As a result of such threats, Johnson recanted his trial testimony. The prosecutor learned of the threats against Johnson, however, and he convinced Johnson to explain in open court what happened to him and why he had changed his testimony. Johnson also reaffirmed his initial trial testimony, and the trial court ordered that he be moved to a different jail.

After these events, the defense attorney representing the plotter on trial moved to strike Johnson's trial testimony as unreliable. The prosecutor objected, explaining that "the system failed [Johnson] ultimately, because I'm responsible for any witness' safety ultimately. And the fault is mine; not his." The trial court denied the motion and allowed the jury to consider Johnson's testimony. Ultimately, the trial ended with a hung jury.

After the trial, the prosecutor moved to rescind Johnson's plea agreement because Johnson committed perjury when he recanted his trial testimony. Following advice of counsel, Johnson did not oppose the prosecutor's motion. Thereafter, Johnson learned that his own attorney had previously represented the second plotting individual against whom Johnson had testified only at the preliminary hearing. Johnson was ultimately tried and convicted and sentenced to life-plus-11-years' imprisonment.

## B

In November 2002, Johnson filed a *pro se* federal habeas petition, primarily challenging the revocation of his plea agreement and asserting ineffective assistance of counsel. The State moved to dismiss such petition as untimely under the Anti-Terrorism Effective Death Penalty Act's ("AEDPA")

one-year statute of limitations, 28 U.S.C. § 2244(d)(1)(A). The district court granted the motion, finding Johnson's petition was filed more than three years after the limitations period had run. The district court further held that statutory tolling and equitable tolling did not apply.

In his first appeal to this court, Johnson conceded that he failed to comply with AEDPA's one-year limitations period, but he argued that the district court erred in concluding that tolling does not apply. In a memorandum disposition, we affirmed the district court as to equitable tolling, but we concluded the record was unclear regarding whether statutory tolling was calculated correctly, and we remanded to the district court for further proceedings. *Johnson v. Knowles*, 116 Fed. Appx. 822, 823-24 (9th Cir. 2004).

On remand, Johnson filed a supplemental brief in which he conceded that he was not entitled to statutory tolling. Nevertheless, he argued that his untimeliness should be excused under the miscarriage of justice exception. Specifically, he argued that the State's revocation of the plea agreement after he had testified at his peril and his own attorney's conflict of interest resulted in his being unfairly held in prison longer than he should have been. The district court disagreed and again dismissed the petition as untimely.

Johnson filed a timely notice of appeal and request for certificate of appealability ("COA"), which the district court denied. Thereafter, we granted a COA solely on the issue of whether the miscarriage of justice exception applies here, and we *sua sponte* appointed counsel for Johnson.

## II

**[1]** The parties agree that *Schlup v. Delo*, 513 U.S. 298 (1995), governs the miscarriage of justice exception. In *Schlup*, a capital habeas case, the petitioner argued a miscarriage of justice would occur if the court failed to reach the merits

of his otherwise defaulted ineffective assistance of counsel and *Brady* claims in light of newly discovered evidence demonstrating his actual innocence. *See id.* at 307-09. Initially, the Supreme Court noted the difference between this type of claim and pure factual innocence claims, like those presented in *Herrera v. Collins*, 506 U.S. 390 (1993), where the petitioner alleged innocence in spite of being afforded "entirely fair and error free" proceedings. *Schlup*, 513 U.S. at 313-14. *Herrera* claims are constitutional claims in and of themselves. *Id.* at 315. *Schlup* claims, on the other hand (sometimes referred to as procedural innocence claims), are not *themselves* constitutional claims, "but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.' " *Id.* (quoting *Herrera*, 506 U.S. at 404).

**[2]** In order to pass through the *Schlup* gateway, the petitioner must establish that his case "falls within the narrow class of cases . . . implicating a fundamental miscarriage of justice." *Id.* at 314-15 (internal quotation marks omitted). Tracing the history of its jurisprudence on this issue, the Court noted that it has "explicitly tied the miscarriage of justice exception *to the petitioner's innocence*." *Id.* at 321 (emphasis added). The Court further explained:

> Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim. However, if a petitioner such as Schlup presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

*Id.* at 316. Thus, in defining the standard of proof required to assert the miscarriage of justice exception, the Court instructed that the "petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

**[3]** More recently, the Supreme Court reiterated that the *Schlup* standard is designed to "ensure[ ] that petitioner's case is truly extraordinary, while still providing petitioner a meaningful avenue by which to avoid manifest injustice." *House v. Bell*, 547 U.S. 518, 537 (2006) (internal quotation marks omitted). Again, the Court explained:

> In the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims. Yet a petition supported by a convincing *Schlup* gateway showing "raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that that trial was untainted by constitutional error"; hence, "a review of the merits of the constitutional claims" is justified.

*Id.* (quoting *Schlup*, 513 U.S. at 317).

**[4]** Following such precedent, we also have limited the application of the miscarriage of justice exception to cases where the petitioner alleges innocence. *Cook v. Schriro*, 516 F.3d 802, 829 (9th Cir. 2008) (holding that "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule, . . . [the petitioner] must show that a constitutional violation has 'probably resulted' in the conviction *when he was 'actually innocent' of the offense*) (internal citations omitted, emphasis added); *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc) (holding that to establish a miscarriage of justice exception, the petitioner must show that his case "fall[s] within the narrow class of cases . . . [involving] extraordinary instances when a violation probably

has caused the conviction *of one innocent of the crime*") (internal quotation marks omitted, emphasis added).

**[5]** Here, Johnson expressly concedes his *guilt*. In his supplemental brief to the district court, he stated: "San Mateo County did not cause me to kidnap Ellis Foots, *I did that* and never can undo it . . . . I know that I deserved to come to prison for my actions, and I accept that." (emphasis added). However, citing *Sawyer v. Whitley*, 505 U.S. 333 (1992), and *Majoy v. Roe*, 296 F.3d 770 (9th Cir. 2002), Johnson argues that the miscarriage of justice exception is not limited to cases where the petitioner's guilt or innocence is called into question, but applies in any case where the court lacks confidence in the proceedings.

In *Sawyer*, concurring Justices Stevens, Blackmun, and O'Connor did indicate that "[w]hile the conviction of an innocent person may be the archetypal case of a manifest miscarriage of justice, it is not the only case." 505 U.S. at 361. But as just discussed, the majority of the Court has not adopted this broader view, nor have any of our sister circuits.[1]

---

[1] *See Moore v. Quarterman*, ___ F.3d ___, 2008 WL 2640094, *6 (5th Cir. 2008) (recognizing the miscarriage of justice exception is "narrow" and only applies where the petitioner shows "a constitutional violation has *probably* resulted in the conviction of one who is actually innocent" (internal quotation marks and citation omitted)); *Goldblum v. Klem*, 510 F.3d 204, 216 (3d Cir. 2007) (same); *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) (" 'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.' " (quoting *Schlup*, 513 U.S. at 316)); *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006) ("The miscarriage-of-justice-exception applies when the petitioner can demonstrate that he is actually innocent."); *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) ("[A] petitioner may use his claim of actual innocence as a 'gateway,' or means of excusing his procedural default . . . ." ) (citing *Schlup*, 513 U.S. at 315-17)); *Horton v. Allen*, 370 F.3d 75, 81 n.3 (1st Cir. 2004) (defining "miscarriage of justice" as " 'a constitutional violation that has probably resulted in the conviction of one who is actually

Additionally, Johnson misapplies *Majoy*. There, we stated that "[a] petitioner need not show that he is actually innocent of the crime he was convicted of committing; instead, he must show that a court cannot have confidence in the outcome of the trial." 296 F.3d at 776 (internal quotation marks omitted). This passage does not stand alone, however. Rather, it comes from our explanation of the *Schlup* gateway standard of proof. The full passage reads:

> Under *Schlup*, a petitioner's otherwise-barred claims [may be] considered on the merits . . . if his claim *of actual innocence* is sufficient to bring him within the narrow class of cases . . . implicating a fundamental miscarriage of justice. In order to pass through *Schlup*'s gateway, and have an otherwise barred constitutional claim heard on the merits, a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. A petitioner need not show that he is "actually innocent" of the crime he was convicted of committing; instead, he must show that a court cannot have confidence in the outcome of the trial.

*Id.* (internal quotation marks, citations, footnote omitted; emphasis added).

**[6]** Thus, in light of Supreme Court precedent, as well as our own, we conclude that the miscarriage of justice excep-

---

innocent' ") (quoting *Schlup*, 513 U.S. at 327)); *Williams v. Bagley* 380 F.3d 932, 973 (6th Cir. 2004) (same); *Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003) (same); *Spears v. Mullin*, 343 F.3d 1215, 1255 n.33 (10th Cir. 2003) (noting that a showing that the petitioner is "actually innocent" is required under *Schlup*); *Zeigler v. Crosby*, 345 F.3d 1300, 1307-08 (11th Cir. 2003) (per curium) ("To establish a fundamental miscarriage of justice, a petitioner must show a colorable claim for actual innocence.").

tion is limited to those *extraordinary* cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt. *Schlup*, 513 U.S. at 317. A petitioner who asserts only procedural violations without claiming actual innocence fails to meet this standard.[2] Therefore, here Johnson's concession of guilt is fatal to his untimely habeas petition.

**AFFIRMED.**

---

[2]We do not decide whether the miscarriage of justice exception applies where a defendant claims to be innocent of the conduct upon which an enhanced sentence is based. *See, e.g., Spence v. Superintendent*, 219 F.3d 162, 172 (2d Cir. 2000) ("Where a petitioner shows by clear and convincing proof that he is actually innocent of the conduct on which his sentence is based, the incarceration is fundamentally unjust and the miscarriage of justice exception to the procedural default bar applies."); *see also Calderon v. Thompson*, 523 U.S. 538, 559-60 (1998) (holding miscarriage of justice exception applies where petitioner shows " 'by clear and convincing evidence' that no reasonable juror would have found him eligible for the death penalty"). Such issue is not raised in this case.