**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAMMY WILLIAMS,<br><br>          Petitioner - Appellant,<br><br>  v.<br><br>PERKINS and TERRY GODDARD,<br>Attorney General State of Arizona,<br><br>          Respondents - Appellees. | No. 07-15385<br><br>D.C. No. CV-06-00275-PHX-EHC<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Earl H. Carroll, District Judge, Presiding

Submitted October 4, 2010[**]
San Francisco, California

Before: HUG, RYMER and N.R. SMITH, Circuit Judges.

Sammy Williams appeals the district court's denial of his habeas corpus

petition under 28 U.S.C. § 2254.  We affirm.

---

      [*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

      [**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

## I

Williams argues that his due process rights were violated because perjured testimony was admitted at trial. He concedes that he did not raise this issue on direct appeal or in his first petition for post-conviction relief, and, as such, it is procedurally defaulted. *See Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) ("On federal habeas review under AEDPA, generally, we may not reach the merits of procedurally defaulted claims."). Yet, Williams submits that he suffered a fundamental miscarriage of justice, and thus, we should review his claim. We disagree. As Williams has presented no new evidence to establish actual innocence, he cannot establish a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Johnson v. Knowles*, 541 F.3d 933, 935 (9th Cir. 2008). Additionally, Williams's claim that James Harris's testimony was perjured is not self-evident. Harris was subjected to cross-examination and questions of credibility or inconsistencies in his testimony were matters for the jury to consider. *See United States v. Scheffer*, 523 U.S. 303, 313 (1998).

## II

The Arizona Court of Appeals's determination that Williams was not denied his right to a jury of his peers is neither contrary to, nor an unreasonable

application of, Supreme Court precedent. The Court has been explicit that explanations for peremptory strikes need not be "persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 767 (1995). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reasons offered will be deemed race neutral." *Id.* At trial, the prosecutor explained that he struck three Hispanic venire members on the basis of work history, lack of faith in law enforcement, age, and personality. The Arizona Court of Appeals's conclusion that the explanations were not inherently discriminatory was not objectively unreasonable. *See Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

III

Nor was the Arizona Court of Appeals's conclusion that the victim's improperly admitted hearsay was harmless beyond a reasonable doubt an objectively unreasonable application of clearly established law to the facts of this case. *See Chapman v. California*, 386 U.S. 18, 24 (1967) (indicating that reversal of a criminal conviction is not required if a federal constitutional error is "harmless beyond a reasonable doubt"). The evidence against Williams was overwhelming, and the admitted hearsay was of little probative value. *See United States v. Pena-Gutierrez*, 222 F.3d 1080, 1089 (9th Cir. 2000). Both Harris and Carissa Morones

testified that Williams was the shooter, that he used a .40 caliber Smith and Wesson semiautomatic gun, and that the last time they saw the weapon was at Williams's cousin's house in Tucson. Any questions about their credibility was a determination for the jury. *See Scheffer*, 523 U.S. at 313. Moreover, other testimony, apart from the victim's statements, corroborated Harris's and Morones's testimony. A bartender at Bandaids testified that Morones had mentioned she was going to do "a private dance for this old man . . . and get as much money as she could, take him for what she could on that." The bartender also testified that Morones had told her that Morones's boyfriend would "be on the side to take care of anything that might go wrong," and that Morones had told her it might involve a gun, "if it was necessary." A resident of the neighborhood testified that he saw "a Hispanic male in the five seven, five eight range" at the victim's car window attempting to peel away sheet metal from the hood . . . ." The victim's statements were merely cumulative to the other testimony presented at trial.

AFFIRMED.