**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 27 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KENNETH CLARK, | No. 11-55646 |
| Petitioner - Appellant, | D.C. No. 5:10-cv-01081-DMG-JCG |
| v. | |
| MATTHEW L. CATE, Secretary, California Department of Corrections and Rehabilitation, | MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted May 13, 2014
Pasadena, California

Before: PREGERSON, REINHARDT, and NGUYEN, Circuit Judges.

Kenneth Clark ("Clark"), a state prisoner, appeals the district court's

dismissal of his 28 U.S.C. § 2254 habeas petition challenging his jury conviction

of second-degree murder. Because the facts and procedural history are familiar to

_____

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

the parties, we do not recite them here except as necessary to explain our disposition. We have jurisdiction under 28 U.S.C. §§ 2253(a) and 1291. We vacate the district court's dismissal of Clark's habeas petition and remand.

**1.** We agree with the district court's conclusion that Clark's federal habeas petition was untimely filed. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner generally must file a federal habeas petition within one year of the date his conviction became final. 28 U.S.C. § 2244(d)(1). (Clark's conviction became final on September 12, 2006.) Statutory tolling, however, applies throughout the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending." § 2244(d)(2). California has no set deadline for filing state habeas petitions, so long as they are "filed within a reasonable time." *Banjo v. Ayers*, 614 F.3d 964, 968 (9th Cir. 2010) (internal quotation marks and citation omitted). The Ninth Circuit has stated that thirty to sixty days is a "benchmark for California's reasonable time requirement." *Velasquez v. Kirkland*, 639 F.3d 964, 968 (9th Cir. 2011) (internal quotation marks omitted).

Here, the six month delay between the January 11, 2007 state habeas evidentiary hearing and July 23, 2007, when Monroe Thomas ("Thomas") signed a second declaration concerning his trial testimony, could be reasonable because

2

Clark and his wife were "conducting an *ongoing investigation* into at least one potentially meritorious claim" with Thomas, a hesitant key witness. *In re Robbins*, 18 Cal. 4th 770, 780 (1998) (emphasis in original). It is unclear why Clark waited, without explanation, for another seven months before filing his February 20, 2008 habeas petition with the San Bernardino County Superior Court. Although a delay that exceeds the "benchmark period" is "occasionally permitted upon a showing of good cause under California law, [Clark] has failed to demonstrate good cause for the delay in this case." *Stewart v. Cate*, – F.3d –, 2014 WL 1707033, at \*5 (9th Cir. May 1, 2014).

Furthermore, Clark is not entitled to equitable tolling. His multiple appeals and habeas petitions demonstrate that "he has been pursuing his rights diligently," but he provides no explanation of an "extraordinary circumstance [that] stood in his way" and prevented him from filing his federal habeas petition on time. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

**2.** Although Clark's federal habeas petition is untimely, we nonetheless remand for an evidentiary hearing, because Clark might well "fall within the narrow class of cases implicating a fundamental miscarriage of justice." *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002); *see also Johnson v. Knowles*, 541 F.3d

3

933, 937 (9th Cir. 2008).  Under *Schlup v. Delo*, where a petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error," the court may consider an untimely petition on the merits.  513 U.S. 298, 316 (1995).  "[A] credible claim of actual innocence constitutes an equitable exception to AEDPA's one-year limitations period, and a petitioner who makes such a showing may pass through the *Schlup* gateway . . . ." *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011) (en banc); *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).

Here, the district court acted without the benefit of *McQuiggin v. Perkins*, and thus could not have evaluated whether Clark made a sufficient showing of actual innocence under that case.  *See* 133 S. Ct. 1924 (2013) (holding that a credible showing of actual innocence excuses a procedural default under AEDPA).

"[Clark] has alleged newly discovered evidence that, if credible, raises a sufficient doubt about his guilt, such that it is more likely than not that no reasonable juror would have found him guilty." *Jaramillo v. Stewart*, 340 F.3d 877, 884 (9th Cir. 2003).  On September 22, 2005, about a month after Clark was sentenced to fifty-five years to life, Clark's wife signed a declaration that Thomas recanted to her his trial testimony.  On March 3, 2006, Thomas signed his first

4

declaration recanting his trial testimony. And on July 23, 2007, Thomas signed a second declaration recanting his trial testimony and explaining his testimony at the January 11, 2007 state evidentiary hearing.[1]

We emphasize that Thomas was the only eye-witness called by the prosecution to testify that Clark was the shooter, because the police received no useful information from anyone at the scene, except for Thomas. Thomas's multiple recantations of his testimony present a compelling claim of actual innocence. The new evidence in Thomas's recantations strongly suggests that

---

[1] There is good reason to discount Thomas's reaffirmation of his trial testimony at the state habeas evidentiary hearing on January 11, 2007, before Judge Krug. Before Thomas was questioned, Judge Krug warned him that if he held to his recantation, Judge Krug would "direct the district attorney to file a criminal Complaint against you for perjury, a felony," and that he would be detained and tried. By contrast, Judge Krug told Thomas that he would "still be in trouble" if he testified that his original testimony had been true, because he recanted it in a declaration under penalty of perjury, but did not threaten him with prosecution, arrest, or detention. When Thomas testified that "it wasn't Mr. Clark with the nine millimeter weapon," Judge Krug interrupted him: "Listen to me. Listen to me. You cannot worm out of what you said at trial." When Thomas later stated that he did not lie at trial, Judge Krug said: "Then, sir, you have saved yourself from a charge of perjury." Judge Krug then found Thomas's reaffirmation of his trial testimony – once again, as at trial, elicited under threat of criminal sanction – credible. After the hearing, in a second declaration, Thomas stated that, "[w]hen the judge asked me if I lied at the trial, I should have said yes; . . . the judge told me that if I said I lied at the trial, I was going to jail. I couldn't face that. I have a job now, am on methadone every day, and my life is better than it has ever been. I couldn't see that all go away, so I told the judge that I told the truth at trial; But, what I said on January 11, 2007, was not true."

5

Thomas committed perjury during the initial trial when he indicated that Clark was responsible for Miguel Rosales's ("Rosales") murder.

Thomas's recantations reveal that another series of events could have led to Rosales's murder: that Thomas and Rosales stole a floor buffer from the hospital where Rosales worked to sell it for drug and beer money, that two bikers threatened to take the stolen buffer away from Thomas and Rosales, that a biker hit Thomas, that a biker was "walking around [Rosales] with a weapon," and that Thomas did not see Clark with a weapon nor did Thomas see Clark shoot Rosales. Thomas's July 23, 2007 declaration also implicated another possible shooter. And Thomas explicitly disavowed his trial testimony: "I see [Clark] sitting there, doing life in prison for a crime I know he did not commit, all because on three occasions, when I had the chance to tell the truth, I didn't do it." Given the critical importance of Thomas's testimony to the prosecution's case and the ambiguous corroborating evidence of Rosales's murder, Clark may well be able to establish that "it is more likely than not that no reasonable juror would have found [Clark] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327.

Clark has demonstrated that an evidentiary hearing could reveal information of "material import on his assertion of actual innocence." *Gandarela v. Johnson*, 286 F.3d 1080, 1087 (9th Cir. 2002). An evidentiary hearing would clarify when

6

and why Thomas identified Clark as the assailant, and resolve inconsistencies between Thomas's various post-trial statements. Because additional testimony from Thomas may substantiate Clark's actual innocence claim, and entitle Clark to override the AEDPA time limit for filing a habeas claim, we remand for an evidentiary hearing on Clark's *Schlup* claim.

Costs shall be taxed against Respondent-Appellee. Fed. R. App. P. 39(a)(4).

**VACATED and REMANDED.**